FILED

2010 Oct-18  PM 02:36
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

|  |  |  |
|---|---|---|
| MARCUS LEE ABERNATHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-G-0428-M |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Marcus Lee Abernathy, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits.  Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

(5)     whether the claimant is capable of performing any work in the
national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d

1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she

will automatically be found disabled if she suffers from a listed impairment.  If the

claimant does not have a listed impairment but cannot perform her past work, the burden

shifts to the Secretary to show that the claimant can perform some other job."  Pope, at

477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Michael L. Brownfield, determined the plaintiff

met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ

found the plaintiff unable to perform his past relevant work.  Once it is determined that

the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to

show other work the claimant can do."  Foote, at 1559.  When a claimant is not able to

perform the full range of work at a particular exertional level, the Commissioner may not

exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.

The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also

prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the

[Commissioner] must seek expert vocational testimony.  Foote, at 1559.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical

opinion of a treating physician must be accorded greater weight than those of physicians

3

employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

The plaintiff alleges he is disabled because he has only one lung after surgery in 1994 and suffers from bipolar disorder. The plaintiff has received treatment at the C.E.D Mental Health Center beginning December 26, 2007. At his initial evaluation he was assessed a GAF score of 50.[1] On February 5, 2008, the plaintiff had a therapy

---

[1] A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV
(continued...)

session with Mr. Hanson and a treatment plan was formulated.  The diagnosis at this time was Bipolar I Disorder, most recent episode depressed, severe with psychotic features of paranoia and thoughts of death.  He was assessed a GAF score of 50.  The plaintiff's treating psychiatrist, Dr. Grant, approved the diagnosis and treatment plan on March 7, 2008.  The plaintiff continued with supportive therapy and underwent a medical evaluation by Dr. Grant on April 4, 2008.  At this evaluation Dr. Grant noted the plaintiff's behavior was suspicious and agitated.  His speech was pressured and his concentration was poor.  His mood was noted to be depressed and anxious, and he had an anxious and labile affect.  Dr. Grant noted that the plaintiff had delusions of paranoia. Dr. Grant assessed GAF of 60.[2]

The plaintiff continued his supportive therapy with Mr. Hanson and continued to be followed medically by Dr. Grant.  On May 23, 2008, Dr. Grant again noted the presence of paranoid ideation with anxious and irritable mood.  Mr. Hanson noted on August 26, 2008 that the plaintiff had fleeting thoughts of killing himself by hanging.  On September 26, 2008 Mr. Hanson noted that the plaintiff had made no progress towards controlling his mood lability and somatic complaints.  He continued to report racing thoughts that prevented sleep.  On October 28, 2008, Mr. Hanson reported

---

[1] (...continued)
at 32 (emphasis in original).

[2] A rating of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)"  DSM-IV-TR at 34 (emphasis in original).

that the plaintiff had only marginal progress towards controlling mood lability and slight progress toward controlling racing thoughts.

On October 31, 2008, Dr. Grant completed a Medical Source Statement (Mental) on which he indicated "extreme" impairments in 10 of 18 areas.  Dr. Grant assessed  "marked" impairments in the other eight areas.  Record 317-319.  At the ALJ hearing, the ALJ stated that if he found Dr. Grant's medical source statement to be an accurate reflection of the plaintiff's impairments, "I will conclude there is no work that can be performed...."  Record 79.  Because Dr. Grant is the plaintiff's treating psychiatrist, his opinions about the level of impairment caused by the plaintiff's mental illness are entitled to great weight.  Under the law of the Eleventh Circuit, if the ALJ fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.

In the present case the ALJ failed to give reasons supported by substantial evidence for refusing to credit the medical source opinion of Dr. Grant.  The only reason given by the ALJ for refusing to credit Dr. Grant is the following:

> The undersigned is aware of the opinions of Dr. Richard Grant and Mr. Louis Hanson, treating sources, but considers them inconsistent with the other medical evidence of record, which has reflected improvement in the claimant's mental condition with medication and psychotherapy treatment.

Record 39.  A review of the medical records relating to the plaintiff's mental illness (summarized above) shows that contrary to the ALJ's assertion, the plaintiff's mental illness did not significantly improve during his course of treatment.  In fact in the final

treatment note from the C.E.D. Mental Health Center dated October 28, 2008, Mr. Hanson reported that the plaintiff had only made "marginal progress towards controlling mood lability" and "slight progress towards controlling racing thoughts."  Record 326. The treatment note from the previous month indicates that the plaintiff had made "no progress towards controlling mood lability" and "poor progress towards controlling somatic complaints."  Record 328.  At that time plaintiff reported that racing thoughts prevented sleep.  Moreover, on August 26, 2008, the plaintiff reported fleeting thoughts of killing himself by hanging.  Record 329.  In this therapy session Mr. Hanson noted that the plaintiff stated that if "things get much worse, he feels he may need to be sent off." Record 329.  Mr. Hanson's plan included the following:  "Encouraged to contact [mental health center] if he needs help with placement in psychiatric hospital."  Record 329.

Therefore, in the 66 days prior to Dr. Grant's medical source opinion of October 31, 2008, the plaintiff's progress had been described as marginal, slight, none, and poor in the treatment records.  During this period the plaintiff reported fleeting thoughts of suicide and psychiatric hospitalization was considered. The ALJ's finding that the "improvement in the plaintiff's mental condition" was inconsistent with Dr. Grant's medical source opinion is unreasonable based upon the record.  Accordingly, it is not supported by substantial evidence and Dr. Grant's mental source opinion must be accepted as true.

The ALJ conceded that a person with a level of impairment indicated by Dr. Grant would be unable to perform any jobs.  Therefore, the Commissioner failed to carry

7

his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.

An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 18 October 2010.


_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

8